Ernest R. Hanson v. Commissioner.
Hanson v. Commissioner
Docket No. 61378.
United States Tax Court
T.C. Memo 1958-74; 1958 Tax Ct. Memo LEXIS 156; 17 T.C.M. (CCH) 357; T.C.M. (RIA) 58074; April 25, 1958
*156 Ernest R. Hanson, 21400 East 14th Street, Hayward, Calif., pro se. Leslie T. Jones, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of the petitioner for the taxable year 1952 in the amount of $688.71. The sole contested issue is whether petitioner is entitled to a deduction of the amount of $7,267 in 1952 as a business or a nonbusiness bad debt. [Findings of Fact] Some facts have been stipulated and are found accordingly. Petitioner is an individual. His 1952 return was filed with the district director of internal revenue in San Francisco, California, on the cash basis. Petitioner by trade was a worker with mosaics. During the depression years mosaic work was scarce and petitioner worked at various jobs. Shortly after his mother's death in 1941, petitioner was inducted into the armed services. While in the service, petitioner's sister, Ione Chapin, sold the family home. Ione asked petitioner and his brother who was also in the armed services, if they would invest their respective shares of the proceeds from the sale of the home in a corporation known as the North Sacramento *157 Stage Line, which she and her husband, A. J. Chapin, were to organize. Petitioner and his brother consented, and each was given a one-quarter interest, and Ione and her husband received the remaining one-half interest in the bus company. During the years 1935 to 1940, petitioner purchased in Europe 24 barrels of mosaic tile. Petitioner did not open the barrels, but placed them in storage. When the home was sold, the custom's receipts were misplaced or lost. Petitioner estimated that the 24 barrels contained between 7,000 and 11,000 square feet. Petitioner testified that he didn't have the faintest idea what the tile cost, but, estimated he paid not less than 27 cents up to $1 per square foot. In 1947, after petitioner's return from the armed service he was employed by the North Sacramento Stage Lines corporation at a salary of $75 per week. In 1947, petitioner's sister, Ione, and her husband, advised him that the North Sacramento Stage Lines was in financial difficulty and requested petitioner's assistance in obtaining a bank loan. On February 15, 1947, the petitioner, Patricia Hanson, Ione, and her husband, executed a promissory note payable to the Capital National Bank of *158 Sacramento in the face amount of $4,000 payable in 90 days at 6 per cent interest. As security for the note, the petitioner transferred to the bank warehouse receipts covering the 24 barrels of mosaic tile. The amount of $4,000 was credited to the account of the North Sacramento Stage Lines. At the time the loan was negotiated, Ione and her husband agreed that in consideration of petitioner's agreement to pledge his mosaic tile as collateral for the loan, they would transfer to petitioner from their one-half interest, an additional one-eighth interest in the North Sacramento Stage Lines. On February 19, 1947, Ione Chapin was killed and her husband was seriously injured in an automobile accident. The latter was confined to the hospital about four months. In the spring of 1948, the North Sacramento Stage Lines was declared bankrupt. The $4,000 note held by the Capital National Bank of Sacramento was not paid, and on November 22, 1948, the bank demanded payment from petitioner. Petitioner was notified that the mosaic tile pledged as security would be sold on December 2, 1948, and on that date the tile was sold for $400. On January 28, 1949, the bank demanded that petitioner pay *159 the balance due on the note. Petitioner has at no time paid any amount to the bank on said note. Petitioner's brother-in-law, A. J. Chapin, after recovering from his injuries was employed as district manager of the Crown Body & Coach Company selling buses in the northern part of California, Washington, Oregon, and Nevada, and earned between $10,000 and $15,000 per year. Chapin died in 1952. Petitioner was informed by Chapin's surviving wife that there was no estate and requested that he assist in defraying the funeral expenses. Chapin was appointed administrator of the estate of his former wife, Ione, and at his death, the administration of her estate had not been completed. Petitioner was thereupon appointed the administrator of Ione's estate. At that time the estate consisted of a bank balance of $276.09, and some other odd "stuff" which petitioner sold. On June 20, 1956, petitioner cleared out the bank account with a check in the amount of $571.28, made payable to the director of internal revenue. Petitioner stated that at the time of Ione's death she left an estate of either $7,500 or $9,000, and that claims filed by the Federal and state authorities for prior income tax liabilities *160 and allowed by the Probate Court left nothing for distribution. Petitioner did not file any claim against the estates of his sister and her husband on account of their alleged indebtedness to him. Petitioner has failed to establish that he sustained a loss in the taxable year 1952, which is deductible as a business or nonbusiness bad debt. Opinion LEMIRE, Judge: The question presented is whether petitioner is entitled to deduct, in the taxable year 1952, the amount of $7,267, or any lesser sum as a business or nonbusiness bad debt. Petitioner, a worker in mosaics, appeared pro se. He has filed no brief. Petitioner was the only witness. Petitioner was allowed to testify in narrative form and was assisted by the Court. Aside from the few facts which were stipulated, the record is unsatisfactory. Petitioner's testimony was indefinite, confusing, and seemingly inconsistent. Petitioner had no records to support his evidence. It appears that petitioner's claim for a bad debt deduction is predicated upon some oral understanding he had with his sister, Ione, and her husband, A. J. Chapin, at the time they requested his assistance in securing a bank loan, to the effect that they *161 would make good any loss he suffered in the event the collateral he agreed to pledge was sold. Other than petitioner's broad statement, his testimony covers no specific facts or terms of the alleged understanding. Within a period of approximately four days after the loan was secured, petitioner's sister, Ione, died. Petitioner's conduct and that of his brother-in-law, Chapin, subsequent to the time the alleged agreement was made, does not persuade us that all the parties concerned actually intended to make any such agreement as now contended by petitioner. It is stipulated that it was agreed that in consideration of petitioner's assistance in procuring the loan Ione and her husband would transfer to him an additional one-eighth interest in the North Sacramento Stage Lines in which petitioner already owned a one-quarter interest. We think it unlikely that Ione and her husband understood that in addition to the one-eighth interest they were transferring to petitioner for his assistance, they were assuming a further liability of approximately $7,267 now claimed by petitioner, since they were both individually liable on the note in question. The record shows that after Chapin's *162 recovery from the tragic accident he was employed and earning between $10,000 and $15,000 a year as a bus salesman. Under such circumstances, we doubt that Chapin would have permitted the pledged collateral to be sold for $400, if he was aware that he would become liable to petitioner in the amount of approximately $7,267. In the light of the entire picture presented, we are unwilling to accept petitioner's unsupported testimony to the effect that there existed an understanding with Ione and her husband that they would make good any loss he sustained by reason of pledging his tile as security for the loan. We think the record warrants the inference that the additional one-eighth interest in the corporation which was transferred to petitioner constituted the final agreement between the parties. Therefore, in our opinion, the petitioner has failed to establish the existence of a valid debt. , affirming a memorandum opinion of this Court [. A further ground for denying relief here is that upon this record the petitioner has not shown the amount of his alleged loss. In his return, petitioner *163 claimed a bad debt loss of $7,267 which he computed by taking the difference between the loan of $4,000 and his alleged cost of the tile in the amount of $11,267. Petitioner had no records to establish the cost. He testified that he estimated the 24 barrels of tile contained from 7,000 to 11,000 square feet based on his estimate of the weight of each barrel. Petitioner estimated that the cost ranged from 27 cents up to $1 per square foot. When asked if he knew how much the tile cost, he replied "I haven't the faintest idea." The record supports that answer. Therefore, we have found as a fact that petitioner has failed to show that he suffered any deductbile loss in the taxable year 1952. The respondent's determination is sustained. Other adjustments are not contested. Decision will be entered for the respondent.